NO. 07-07-0378-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 19, 2008
_____

GABRIEL GIL MARTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-07A-001; HONORABLE ROLAND SAUL, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Gabriel Gil Martinez, was convicted of burglary of a habitation with intent to commit assault. The jury found the enhancement paragraph true and sentenced appellant to confinement for a term of five years in the Institutional Division of the Texas Department of Criminal Justice. By one issue, appellant contends that the evidence was legally insufficient to support the judgment. We affirm.

Factual Background

Valerie Gomez resided at 237 Avenue J in Hereford, Texas. She lived with her father in the home that belonged to her father.[1] On October 22, 2006, Jessica Cano was at Gomez's residence. Cano was either appellant's common-law wife or his girlfriend. Cano had moved her personal property from appellant's residence a few days before the incident in question. On the evening in question, Gomez and Cano were at the Gomez residence with two men. During the earlier part of the evening, appellant had talked to Cano on the telephone. As a result of the conversation, appellant appeared at the Gomez residence requesting the keys to the car that Cano was driving. Gomez testified that appellant was not allowed in the home because she was afraid there would be trouble. Gomez got the keys and gave them to appellant. Within an hour or so, appellant appeared again at the home of Gomez requesting the key to the house he had shared with Cano. Again, he was not allowed to come into the Gomez home. Gomez obtained the key and gave it to appellant. Sometime near midnight of the same evening, appellant drove to a vacant lot behind the Gomez home and parked his car. Appellant went to the rear of the house and looked in through a kitchen window. Appellant observed Cano and a male, later identified as Martin Rendon, holding hands, embracing, and kissing. Appellant knocked loudly on the back door and proceeded to kick the door at least twice. The door was secured by two boards that had been nailed over the door to prevent the door from being opened. Failing to gain entry at the rear, appellant went around the house toward the front

---

[1] Gomez's father, George Lopez, was not present when the burglary took place and did not testify at trial.

door. As appellant went around the house, a second male in the house, Anthony Ontiveros, went out the front door to investigate and around the house on the side opposite appellant. The testimony was in conflict as to whether Oniveros shut the front door behind him. Appellant entered the house without knocking and proceeded to the kitchen where he assaulted Rendon. When appellant entered the kitchen, Cano fled to another portion of the house. After striking and kicking Rendon, appellant searched the house for Cano, finding her in a bedroom closet. Appellant attempted to pull Cano from the closet and, in doing so, pulled her wig off of her head. Gomez proceeded to call 911 and appellant left the scene.

The police arrived, took the information, and had the witnesses come to the police station to give statements. The following day, appellant contacted a detective with the Hereford police and made arrangements to come in and give a statement. On the next day, appellant appeared and gave a voluntary statement after being warned of his constitutional rights. The statement was introduced at trial. The jury ultimately convicted appellant and this appeal followed, wherein appellant contends that the evidence was legally insufficient to prove he entered the habitation without the effective consent of the owner.

Legal Sufficiency

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.

3

*Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

In discussing the application of the standard of review for legal insufficiency, the Texas Court of Criminal Appeals set forth some guidelines in *Clayton v. State* that we find instructive in the instant case. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). This standard of review applicable to a legal sufficiency challenge accounts for the jury's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the basic facts to the ultimate facts. *Id*. Therefore, in analyzing the legal sufficiency of the evidence, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id*. In our review, we consider all the evidence without deference to whether it was properly or improperly admitted. *Id*. Because we are to view the evidence in the light most favorable to the verdict, when the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the verdict and defer to their determination. *Id.* Finally, circumstantial evidence is as probative as direct evidence in proving an actor's guilt and alone can be sufficient to establish guilt. *Id*.

In order to establish appellant's guilt, the State was required to prove that the appellant, without the effective consent of the owner, entered a habitation with the intent

4

to commit the offense of assault.  See TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003).[2] The State alleged that Valerie Gomez was the owner of the Gomez house for purposes of the indictment.  Owner is defined as the person who has title to the property, possession of the property, whether lawful of not, or a greater right to possession of the property than the actor.  See § 1.07(35)(A).

In applying the foregoing law to the facts, we note that Gomez was living in her father's home and no one has challenged her actual authority to determine who had the right to enter the Gomez home on the date in question.  Further, the testimony demonstrated that she did not allow appellant in the home on the two earlier visits.  In each of the prior instances, appellant knocked and waited for the door to be answered.  From this, the jury could easily infer that appellant knew he did not have consent to enter the home as he pleased.  Additionally, Gomez's testimony demonstrated that she feared a confrontation between appellant and Cano if appellant was allowed to enter the house. Cano testified that Gomez's father did not allow appellant in the home.  Against this evidence, appellant testified that he had been in the house before to visit Gomez's children, who were his nephew and niece.  Appellant did admit that those visits were with his brother, Gomez's former husband and the father of the children.  Appellant's entry into the home at the time of the assault was preceded by, what the jury could have inferred, an attempt to break into the house through the back door.  After being unable to gain entrance via the barred back door, appellant ran around to the front and immediately entered the house.  Finally, appellant makes much of the fact that he says the front door was open

---

[2] Further references to the Texas Penal Code will be by reference to "§ ___."

5

when he came in.  However, this testimony was also in conflict.  Ontiveros testified that he shut the door.  Further, the fact that the door may have been opened does not mean entry was with consent.  See Johnson v. State, 664 S.W.2d 420, 422 (Tex.App.–Amarillo 1983, no pet.).  It was up to the jury to listen to the evidence and to make the final determination.  Clayton, 235 S.W.3d at 778.  Based upon the record before us, we cannot say that the jury acted irrationally in deciding these issues against appellant.  Therefore, we conclude that the evidence was legally sufficient.

## Conclusion

Having determined that the evidence was legally sufficient, we affirm the trial court's judgment.


Mackey K. Hancock
Justice


Do not publish.